<u>NOT FOR PUBLICATION</u>                                [Dkt. Ent. 34]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

CAMDEN VICINAGE

|  |  |
|---|---|
| RAYMOND EVANS, | : |
| Plaintiff, | : Civil No. 07-3139 (RMB/KMW) |
| v. | : **OPINION** |
| BV Shipping Company Lombok Strait, | : |
| Defendant. | : |

<u>Appearances</u>:

Michael O. Pansini
Gregory J. Kowalski
Pansini & Mezrow
1525 Locust Street
Philadelphia, PA 19102

    Attorneys for Plaintiff

Kevin L. McGee
Carl D. Buchholz, III
Rawle & Henderson, LLP
401 Route 73 North, Suite 200
Marlton, NJ 08053

    Attorneys for Defendant.

**BUMB**, United States District Judge:

    This matter comes before the Court upon two motions bearing upon how this case will be presented to the jury.  The defendant, BV Shipping Company Lombok Strait (the "Defendant"), on the eve

1

of trial, filed a motion in limine to preclude the jury from considering future income losses as an element of damages. The plaintiff, Raymond Evans, (the "Plaintiff") has opposed the motion.[1] During the Court's Charge Conference, Plaintiff objected to a proposed jury instruction regarding superseding/intervening causation (Draft Charge 2.5) and, relatedly, asked that the Court include an apportionment of fault to a non-party joint tortfeasor, Delaware River Stevedores, on the verdict form, which Defendant opposed. For the reasons set forth herein, the Court will grant Defendant's motion to preclude the jury from considering future income losses as an element of damages, and will grant Plaintiff's motion to strike Draft Charge 2.5 and to include on the verdict form an apportionment of fault to the non-party joint tortfeasor.

## BACKGROUND

The events giving rise to this case are well known to the parties, and so the Court need not explore them in depth here. By way of summary, on May 16, 2005, Raymond Evans sustained

---

[1] Pursuant to the Notice of Trial issued by the Court on July 20, 2009, motions in limine were due to be filed "two weeks prior to the trial date." (Trl. Ntc. [Dkt. Ent. 21].) Defendant's motion was therefore untimely. Defendant asserted that the motion's lateness was unavoidable, since Plaintiff's physician and expert witness, Joseph Thoder, was not deposed until the weekend before the trial began. To minimize any prejudice to Plaintiff, the Court has reserved ruling upon the motion until now, and has given Plaintiff repeated opportunities to argue, research, and reargue the matter during the course of the trial.

injuries to his hand while working as a longshoreman in connection with cargo operations on the M/V Lombok Strait, a vessel owned by Defendant.  Plaintiff has sought to establish at trial that the injury resulted from a defective twistlock, which he was affixing to a shipping container at the time of the incident.  Plaintiff attributes the twistlock's defective condition to Defendant's negligence, as defined by the limited "turnover duty" that a vessel owes to longshoremen.  See Scindia Steam Nav. Co., Ltd. v. De Los Santos, 451 U.S. 156, 166-67 (1981) (defining the "turnover duty").  Plaintiff has presented expert testimony to establish that his hand injury prevents him from continuing to work as a longshoreman.  Defendant has elicited testimony at trial that it is not liable for Plaintiff's injury because: first, the allegedly defective twistlock was not part of the ship's equipment, a predicate condition of vessel liability; and second, the twistlock was not in fact defective, rather Plaintiff's injury was caused by a combination of his own negligence and the negligence of his employer, the stevedoring company.

**DISCUSSION**

**1.    Future Lost Income**

The first matter before the Court is whether the jury may award Plaintiff damages for his future lost income.  The only evidence regarding future lost income that Plaintiff has

presented is: the testimony of his physician, Joseph Thoder, that his injury permanently prevents a return to longshore work; documentation of Plaintiff's current income and his income for the two years he worked as a longshoreman; and Plaintiff's own testimony that he expected to work as a longshoreman until retirement age. Because a jury award must be discounted for future value, Plaintiff has asked the Court to take judicial notice of a chart entitled "Present Value of Annuity Factors", which calculates the future value discount based upon interest rates of one to seven percent. Plaintiff has argued that the Court may select the appropriate interest rate, or the jury may use their general knowledge to select the appropriate rate, and that the Court should instruct the jury on using the chart to award damages for future lost income.

    Two problems prevent the Court from allowing the jury to award future lost income. First, Plaintiff asks the Court to present the jury with the Present Value Table in a vacuum. The jury has heard no testimony on the Table's function, how it may be used, and the appropriate interest rate to apply. In short, Plaintiff asks that this piece of evidence be submitted to the jury without having laid any foundation for it, which is usually done by the testimony of an expert witness "who, once qualified, opines on various issues including work life expectancy, future damages, and methods for discounting the same to present value."

Crane v. Crest Tankers, Inc., 47 F.3d 292, 295 (8th Cir. 1995). The Crane plaintiff did exactly what Plaintiff seeks to do here, that is, to present a Present Value Table to the jury without any foundational expert testimony. The Eighth Circuit held that admission of the table was in error, because, in addition to lacking foundational testimony to contextualize the Table, the Crane plaintiff had not presented the jury with evidence as to what would constitute a fair interest rate in using the table, and, furthermore, the table was itself inadmissible hearsay. Although Plaintiff suggests that the Court could decide the appropriate interest rate based upon argumentation by counsel, the Court is ill-equipped to resolve this sort of technical fact dispute.

Also, a second problem precludes the award of future lost income: Plaintiff has not presented sufficient testimony to enable a nonspeculative award. A jury must be presented with "more than speculative opinion when determining damages for prospective earnings loss." Benjamin v. Peter's Farm Condominium Owners Ass'n, 820 F.2d 640, 642 (3d Cir. 1987). To support a future earning loss calculation, a plaintiff must present an evidentiary basis with "proper foundation and sufficient factual predicates . . . ." Id. at 643. "Although mathematical exactness is not required, testimony of post-injury earning capacity must be based upon the proper factual foundation." Id.

5

"In determining future earnings, the [jury] will consider evidence of the probable duration of plaintiff's earning capacity and conditions unconnected with the accident that might have reduced plaintiff's expectancy below the normal term. . . . Unless there is nonspeculative evidence demonstrating that future suffering, additional medical expenses, and loss of income will occur, <u>the question should not be submitted to the jury</u>." Robert S. Hunter, Federal Trial Handbook Civil § 68:6 (4th ed., WL 2009) (emphasis added) (citing <u>Wood v. Day</u>, 859 F.2d 1490 (D.C. Cir. 1988)).[2]

In <u>Benjamin</u>, the Third Circuit remanded a damages award because it lacked a proper factual foundation. 820 F.2d at 640-42. In that case, the plaintiff offered the testimony of an accountant who calculated the plaintiff's future lost earnings in reliance upon the plaintiff's own assessment of his lost income. The Third Circuit characterized the accountant's estimate as a

---

[2] Plaintiff has cited New Jersey state authorities for the proposition that he need only demonstrate a "<u>reasonable probability</u> that [his] injuries will impair future earning capacity." <u>Lesniak v. County of Bergen</u>, 117 N.J. 12, 21, 563 A.2d 795 (N.J. 1989) (citing <u>Coll v. Sherry</u>, 29 N.J. 166, 176, 148 A.2d 481 (1959)). Apparently, in New Jersey state courts, plaintiffs need not present specific evidence of such dispositive factors as work-life expectancy. See <u>Hawkins v. 248 Haynes St. Assoc., Inc.</u>, No. A-5648-93T2, 1995 WL 378462, *10 (N.J. Super. June 1, 1995). Unfortunately for Plaintiff, the federal standard set forth in <u>Benjamin</u>, which is more rigorous than the New Jersey standard, governs this case. See <u>Wood v. Day</u>, 859 F.2d 1490, 1493 (D.C. Cir. 1988) (holding that "damages are available only if [future] consequences are <u>reasonably certain</u>" (not "reasonably probable") (emphasis added)).

"castle made of sand," id., because it extrapolated from a speculative baseline, namely, the plaintiff's own guess as to his lost income. The Court noted that the plaintiff's guess did not account for such considerations as whether he could reasonably expect to earn the same wage each year.

Here, the matter of future lost earnings suffers from the same defect as in Benjamin. Even if reliance upon the Present Value Table were permissible, the jury would be constructing a "castle made of sand" because it would be calculating from a speculative baseline, namely, a guess of Plaintiff's expected earnings but-for his injury, as well as a guess as to how long Plaintiff would have been expected to work as a longshoreman but-for his injury.

Plaintiff has argued that a jury may use common sense to estimate the number of years a longshoreman in Plaintiff's position would normally work before reaching retirement. Leaving such critical and disputed factors up to a jury's common sense, however, deprives Defendant of the opportunity to cross-examine witnesses on those factors. For example, Defendant has argued that Plaintiff had a preexisting gunshot wound and knee injury that may have affected how long he would have been able to work as a longshoreman.[3] Certainly, Plaintiff, who testified that he

---

[3] The Court sustained Defendant's objection to having these preexisting conditions put before the jury as part of Dr. Thoder's testimony.

7

intends to work until normal retirement age, lacks the expertise to opine on the effect his preexisting injuries (or any other medical conditions undisclosed heretofore) will have on his professional longevity.  And Plaintiff's physician testified only that Plaintiff's hand injury permanently prevented him from returning to longshore work; a question on cross-examination about the effect Plaintiff's preexisting injuries might have had, but-for his injury, on his ability to work two decades into the future would have been beyond the scope of both direct-examination and the physician's expertise.  Notably, it appears that Plaintiff intended to call as a witness Dennis Mohn, a vocational expert, but declined to do so for reasons not known to the Court.  Without the testimony of an expert like Mr. Mohn, and on the record now before the jury, an award of future lost income would be speculative and is therefore impermissible.  Accordingly, the Court will not admit the Present Value Table, nor will it permit the jury to calculate an award of future lost earnings.

        2.    **Superseding Cause Instruction and Verdict Form**

The Court now turns to Plaintiff's application that Draft Charge 2.5, regarding superseding/intervening causation, be stricken from the jury instructions, and, relatedly, that the Court include on the verdict form an apportionment of fault to a non-party joint tortfeasor, Delaware River Stevedores.

Plaintiff's applications touch upon the fascinating intersection of causation and damages in cases implicating a non-party joint tortfeasor.

In _Edmonds v. Compagnie Generale Transatlantique_, the Supreme Court held that where a ship's negligence causes injury to a longshoreman, the ship is liable for the full amount of the longshoreman's damages, reduced _only_ by the percentage of damages caused by the longshoreman's own negligence. 443 U.S. 256, 266 (1979). Even when a non-party joint tortfeasor, such as a stevedoring company, bears some fault for the plaintiff's injury, a negligent ship-defendant is liable for the full damages award (minus the plaintiff's potion of fault).[4]  _Id._

The _Edmonds_ rule presents a peculiar problem in cases where a ship-defendant elicits testimony about the stevedoring company's negligence in order to establish that its own negligence did not proximately cause the plaintiff's injury. Because _Edmonds_ holds that the ship-defendant is liable for the full damages amount (minus the percentage caused by the

---

[4] While arguing this matter, Defendant repeatedly cited _Hill v. Reederei F. Laeisz G.M.B.H., Rostock_ for the proposition that "[t]he concurrent negligence of non-defendants, such as statutorily immune stevedoring companies, _is irrelevant_." 435 F.3d 404, 418 (3d Cir. 2006) (emphasis added). Defendant misreads this portion of _Hill_. The negligence of a non-party joint tortfeasor is certainly irrelevant to the question of a defendant's liability. However, if the non-party is in fact a joint tortfeasor, its portion of the fault is indeed relevant insofar as it is paid by the defendant.

plaintiff-longshoreman's own negligence), including whatever percentage might otherwise have been attributed to the stevedoring company, the ship-defendant runs a risk in amplifying the stevedoring company's role in causing the accident -- namely, if the jury finds that the ship's negligence <u>was</u> a proximate cause of the plaintiff's injury, the ship effectively becomes liable for the stevedoring company's share of the damages, which it sought to inflate.  In other words, avoiding liability altogether may be strategically at odds with minimizing the damages award.

This very problem has arisen here.  Defendant has sought to elicit testimony that Plaintiff's injury was caused not by Defendant's negligence, but by the negligence of Plaintiff and the stevedoring company.  In other words, Defendant has implicated the stevedoring company in order to establish that its own negligence did not proximately cause Plaintiff's injury.

### A. Superseding Cause Instruction

As the Court has already stated on the record, it will not instruct the jury on the matter of superseding causation.  As just discussed, throughout this trial Defendant has presented to the jury its theory that the negligence of the Plaintiff himself, as well as that of Mr. Revak, the crane-operator, were superseding causes of Plaintiff's injury.  Specifically, Defendant has presented the theories that Plaintiff negligently

inserted the twistlock into the container while the container was still in motion, and that Mr. Revak, while operating the crane without properly communicating with the longshoremen below, negligently lifted the container before Plaintiff had completed affixing the twistlock.

The Third Circuit has held that in a case such as this, a "superseding cause" instruction should be given only if "a reasonable jury might conclude that [the intervening conduct] would have been extraordinary . . . ." Hill v. Reederei F. Laeisz G.M.B.H., Rostock, 435 F.3d 404, 418 (3d Cir. 2006). "An extraordinary act is one which is not done in the normal course of events." Id. at 417. Importantly, "The fact that an intervening act . . . is negligent . . . does not make it a superseding cause of harm . . . , if . . . the [defendant] at the time of his negligent conduct should have realized that a third person might so act . . . ." Id. at 418 (citing Restatement (Second) of Torts, § 447). In other words, even if Plaintiff and/or Mr. Revak acted negligently, their negligence will constitute a superseding cause only if their acts could not reasonably have been anticipated by Defendant.

The Third Circuit has warned District Courts to exercise caution before giving a superseding cause instruction:

> Because of the danger that ordinary stevedore negligence might be inferred to cut off shipowner liability entirely, <u>courts must be wary of giving superseding cause instructions, and should do so, if at all, only when</u>

11

>      there is an adequate evidentiary basis.

Id. at 421 (emphasis added).  In fact, the Court highlighted in a footnote the Pennsylvania Suggested Standard Civil Jury Instructions, which recommends that "[n]o instruction should be given" on superseding cause because it "will only serve to confuse the jury."  Id. at 419 n.13 (citing Pa. Suggested Standard Jury Instructions (Civil) 3:28).

Following the Third Circuit's instruction, this Court will not give the proposed instruction.  Here, although a reasonable jury may find that Plaintiff and/or Mr. Revak acted negligently, the evidence does not support a finding that their conduct was "extraordinary."  Mr. Revak testified that he operated the crane on the day of the accident the same way he always did.  The most illuminating testimony, however, came from Mr. Curran, Defendant's expert witness, who testified that the purportedly negligent conduct resulted from the fact that Plaintiff "simply wasn't paying attention" and that Mr. Revak operated the crane, as many crane operators do, without properly communicating with the longshoremen below.  Instructively, Mr. Curran commented, "The stevedoring industry is a notoriously unsafe industry and I believe that companies should be more responsible in teaching people how to do things the right way."  The Court understands Mr. Curran's testimony to mean that the purportedly negligent conduct of Plaintiff and Mr. Revak was perfectly regular and

ordinary, albeit unsafe.  In fact, Mr. Curran's testimony in this case is remarkably similar to his testimony in <u>Hill</u>, when he opined that the intervening actor "should not have" done what he did, but, nonetheless, what he did was "actually quite common." <u>Id.</u> at 418 n.12 and accompanying text.  In that case, the Third Circuit contrasted the intervening actor's "quite common" conduct with such extraordinary conduct as "pull[ing] out a gun and shooting [the plaintiff]" or utilizing a "radical and untried . . . technique, [by employing], say, a blowtorch or chainsaw" to thaw frozen equipment.  <u>Id.</u> at 417.  Here, the purportedly negligent conduct was nothing so unusual.  Accordingly, the proposed "superseding conduct" instruction will be omitted from the jury charge.

### B.   Verdict Form

Defendant has presented to the jury its theory that the stevedoring company bears some fault for Plaintiff's injury.  So the Court may discount a jury award for Plaintiff's comparative negligence, Defendant now proposes that the Court instruct the jury to apportion fault for the injury between only the two parties to this lawsuit, Plaintiff and Defendant.  The Court will not adopt Defendant's proposal, however, as it is illogical and invites extraordinary juror confusion.

Defendant has presented a case to the jury suggesting that Plaintiff's injury was proximately caused by multiple actors, one

of which is the stevedoring company, Delaware River Stevedores. Defendant now seeks to have the jury apportion fault between <u>only</u> itself and Plaintiff. If the Court were to adopt Defendant's approach, it is unclear how a jury believing Defendant and the stevedoring company to be joint-tortfeasors would go about allocating fault. Believing it unfair to burden Defendant with paying for the stevedoring company's negligence, a jury might attribute the stevedoring company's fault to Plaintiff, or it might divide the absent stevedoring company's fault evenly between the two parties. A jury should not, however, be invited to apportion fault based upon its sense of what outcome would be most fair; rather, a jury should apportion fault based upon its understanding of the facts -- that is, based upon which actors it believes were <u>actually at fault</u>.[5]

Furthermore, one can imagine a scenario in which the jury, after finding that the negligence of both Defendant and Plaintiff proximately caused the injury, determines that Plaintiff is 25 percent at fault, Defendant is 25 percent at fault, and the stevedoring company is 50 percent at fault. However, Defendant's proposed verdict form permits the apportionment of fault between

---

[5] This concern is especially acute here, where the controlling legal rule set forth in <u>Edmonds</u> might strike one as intuitively unfair. <u>Accord</u> <u>Hill</u>, 453 F.3d at 413 (recognizing the counterintuitive nature of the <u>Edmonds</u> rule by commenting that "judicial sympathy for the ship comes at the cost of a pound of the longshoreman's flesh").

only Defendant and Plaintiff, and demands that the sum of the two figures be 100 percent.  In such a case, a reasonable jury believing that Plaintiff and Defendant are equally at fault might simply assign 50 percent to both parties, omitting the stevedoring company's fault altogether.  This consequence would be in error, since a finding that Plaintiff's fault contributed only 25 percent to the accident should result in Defendant paying 75 percent of the verdict.

The Court of Appeals for the Sixth Circuit provides useful guidance in an unpublished opinion, Sorenson v. Robert B. Miller & Associates, Inc., Nos. 95-5085, 95-5086, 1996 WL 515351 (6th Cir. Sept. 10, 1996).  In Sorenson, faced with the same set of facts as here, the District Court below instructed the jury to apportion fault between only the plaintiff and defendant, just as Defendant urges this Court to do.  Although the Sixth Circuit ultimately declined to remand for a new trial, the Court stated, "[W]e are troubled by the potential for confusion created by the [verdict] form used here."  Id. at *3.  Sorenson stands for the proposition that juries should apportion fault among all joint-tortfeasors, including a non-party stevedoring company.

This Court will not create the same potential for confusion that so troubled the Sixth Circuit.  Accordingly, the Court will allow the jury to apportion fault among all parties, including Delaware River Stevedores.  The Court hastens to add that the

problem now before Defendant is one of its own making.[6] Defendant has chosen to elicit testimony that the negligence of the stevedoring company proximately caused Plaintiff's injury. Yet, Defendant now complains that the verdict form should not reflect the very understanding that Defendant has itself cultivated. Surely, a verdict form without any place to apportion the stevedoring company's fault would most certainly create jury confusion.

Accordingly, the Court will grant Plaintiff's application to allow the jury to apportion fault on the verdict form to the stevedoring company, Delaware River Stevedores.[7]

## CONCLUSION

For the reasons stated herein, the Court will grant

---

[6] Compare Thomas v. Carroll, No. 06-2282, __ F.3d __, 2009 WL 2998957, *10 n.3 (3d Cir. Sept. 22, 2009) ("[The defendant] is in a similar position to a young man who murders his parents and then seeks the sympathy of the court because he is an orphan.").

[7] The Court recognizes that there is a third alternative: the verdict form could simply ask, "What percentage did Plaintiff's own negligence play in causing his injury?", and then the Court could discount the jury's award by that percentage. This alternative suffers from the same defect as the previously discussed alternative, namely, that the jury is likely to be confused as to whether the stevedore's negligence is attributable to Plaintiff and may be invited to inject its own desire for a fair outcome into its finding of facts. Asking the jury simply to allocate a percentage of fault to Plaintiff still leaves the jury to speculate on how the non-party joint-tortfeasor fits into its calculation.

On the morning of closing arguments, the Court received a facsimile transmission from Defendant's counsel advocating this alternative. The Court had already considered this option and rejected it for the above-stated reasons.

Defendant's motion to preclude the jury from considering future income losses as an element of damages; and, furthermore, the Court will grant Plaintiff's motion to strike Draft Charge 2.5 and to include on the verdict form an apportionment of fault to the non-party joint tortfeasor, Delaware River Stevedores.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Dated: October 5, 2009